In re OLMSTEAD.

(Supreme Court, Special Term, Albany County. March 14, 1895.)

1. TAX SALE—VACATING—WHO MAY APPLY.

Where land bid in by the state at a tax sale is afterwards sold and conveyed by the state to a third person, the grantee of the state is not within Laws 1893, c. 711, § 20, providing for the cancellation of a tax sale of land "on application of any person having any interest therein at the time of the sale," as the statute refers to the time of the tax sale and not to the time of any subsequent conveyance by the purchaser at the tax sale.

2. SAME—ASSIGNEE OF PURCHASER.

The provision of Laws 1893, c. 711, § 20, that on cancellation of a tax sale, after the conveyance has been executed, the comptroller shall refund to the purchaser, his representatives or assigns, the purchase money and interest thereon, does not give to such representatives and assigns a right to apply for the cancellation of the tax sale which the statute provides shall be "on application of any person having any interest in the land" at the time of the sale.

3. SAME—PURCHASE BY STATE.

Land bid in by the state at a tax sale becomes a part of the forest preserve under the laws relating thereto, and therefore the purchaser from the state of land bid in by the state at tax sale is not an assignee of the purchaser, within the meaning of Laws 1893, c. 711, § 20, providing for the cancellation of tax sales and the refunding of the purchase money to the purchaser, his representatives or assigns; but the only remedy of such grantee of the state is that given by 1 Rev. St. p. 198, § 6, providing that wherever the title of the state to lands granted under its authority shall fail, the original purchase money paid by the grantee, with interest, shall be refunded to him.

At chambers. Application by John W. Olmstead for writ of mandamus against James A. Roberts for the cancellation of a tax sale. Denied.

Steadman, Thompson & Andrews, for the application.
T. E. Hancock, Atty. Gen., opposed.

HERRICK, J. At various state tax sales held between the years 1877 and 1885, inclusive, several lots of land located in the

county of Saratoga were exposed for sale by the comptroller of the state for nonpayment of taxes, and were bid in by the state at such tax sales, and deeds therefor were executed and delivered to the state of New York by the comptroller, and the county of Saratoga was credited with the amount of such sales, which appear to have amounted to the sum of $2,069.96. On or about the 14th day of December, 1891, all the right, title, and interest of the state in said lots were conveyed to John W. Olmstead, by the state of New York, the deed reciting that such conveyance is made by virtue of a provision of section 8 of chapter 283 of the Laws of 1885, as amended by chapter 475 of the Laws of 1887, and upon the recommendation of the forest commission of said state, with the advice of the attorney general of said state. The laws referred to authorize a conveyance of portions of what is known as the "Forest Preserve of the State," upon the recommendation of the forest commission, coupled with the advice of the attorney general. On the 26th day of December, 1893, the deputy comptroller of the state, upon the application of said Olmstead, canceled the tax sales of the lots in question, and directed "the refunding to John W. Olmstead of the sums due by reason thereof." The amount paid by John W. Olmstead to the state upon receiving the deed above described, was the sum of $1,551. Thereafter the said Olmstead applied to the present comptroller, James A. Roberts, and demanded the payment of the sum of $2,069.96, with interest from the 26th day of December, 1893, which the comptroller refused to pay, and an application is now here made to this court that a peremptory writ of mandamus issue, directing the comptroller to draw his warrant upon the state treasurer, for the payment from the state to the said John W. Olmstead of the sum of $2,069.96, with interest from the 26th day of December, 1893. The relator, Olmstead, having paid $1,551 for lands purchased by him from the state, now, upon the failure of the state's title, asks that there shall be refunded to him, not the amount paid by him upon his purchase, but the amount that the state paid therefor upon its purchase of such lands, by giving credit to the county of Saratoga for the amount due from the state to the said county for state taxes. A bare statement of the facts shows that there is no equity in the relator's claim, and that he is seeking to obtain from the state money he has never expended, under the provision of a statute intended to afford equitable relief to persons purchasing at tax sales, who have acquired defective tax titles, by refunding to them the moneys expended by them in making such purchases.

The statute under which he claims to be entitled to reclaim the money is section 20 of chapter 711 of the Laws of 1893. This section provides for the cancellation of tax sales by the comptroller. The first part of the section provides for such cancellation in the event of the discovery of an illegality before the delivery of the conveyance, and another portion of the section provides for the cancellation where the discovery of the illegality of the sale is made after the delivery of the conveyance. The latter portion reads as follows:

"If he shall not discover that the sale was invalid until after a conveyance of the lands sold shall have been executed, he shall on application of any person having any interest therein at the time of the sale, on receiving proof thereof, cancel the sale, refund out of the state treasury to the purchaser, his representatives or assigns, the purchase money and interest thereon, and recharge the county from which the tax was returned, with the amount of purchase money and interest from the time of the sale, which the county shall cause to be levied and paid into the state treasury; on any such application the comptroller may appoint a commissioner with like powers and duties as in case of an application for redemption."

Under this provision it seems to me that the cancellation of the tax sale in question here by the comptroller was illegal; that the comptroller had no jurisdiction to make it. The power attempted to be exercised by the comptroller is purely a statutory power, and must be executed in strict compliance with the statute, and it will be observed that such cancellation is to be made "on application of any person having any interest therein at the time of the sale." This means the tax sale, not any subsequent conveyance by the purchaser at such tax sale. There can be no claim in this case, I think, that the relator, Olmstead, had any interest in the lands in question at the time of the sale, or was a purchaser thereat. It has been decided under this and similar statutes that the only person who can make an application for such cancellation is the purchaser at the tax sale. People v. Roberts, 144 N. Y. 234, 39 N. E. 85. While it has been held that the assignee, or the personal representative of the purchaser, is entitled to receive the money to be refunded upon such cancellation, and that a grantee of the purchaser is an assignee within the meaning of the statute (People v. Chapin, 109 N. Y. 177, 16 N. E. 331), yet that does not affect that portion of the statute which requires the application to be made by a person interested in the premises at the time of the sale. In this case the purchaser was the state. The state has made no application for a cancellation, and, the purchaser having failed to make any application, the act of the comptroller in canceling such sale was without jurisdiction and void. But further than that I do not think the statute in question is applicable to a case like the one now under consideration. It was intended for the relief of parties purchasing property at tax sales, when the title proves defective, to enable them to recover back the amount of money paid by them at such tax sales. Here the state has bid in the property in question, in default of purchasers. Under the statutes of the state it has become a part of the forest preserve, and has been conveyed by the state to the relator, not as an assignment of a tax title, but under the laws in relation to the forest preserve. The relator is not an assignee of the purchaser at a tax sale, within the meaning of the statute. The relator has paid no taxes. He is not the assignee of any one who has. The statute, as before stated, was intended to afford equitable relief to bona fide purchasers. It was not intended to afford opportunities for swindling the state. For the money he has actually expended the relator has his remedy under section 6, art. 1, tit. 5, c. 9, pt. 1, of the Revised Statutes (Birdeye's Ed., p. 1781, § 6), reading as follows:

"Whenever the title of the people of this state, to lands granted under its authority shall fail, and a legal claim for compensation, on account of such failure, shall be preferred by any person entitled thereto, it shall be the duty of the commissioners to direct the payment of the original purchase monies, which may have been paid to the state by such person, with interest at the rate of six per cent., from the time of such payment, to be paid out of the treasury, on the warrant of the comptroller."

That statute affords all the relief to which the relator is honestly entitled. The present application seems to me to have no foundation in either law or equity, but to be simply a bald attempt to obtain from the state money that it has never received, which the relator never paid, and to which he has neither a legal nor a moral claim. The application is denied, with costs.