(57 App. Div. 342.)

### PEOPLE ex rel. HALL v. WOODRUFF et al., Board of Com'rs of Land Office.

(Supreme Court, Appellate Division, Third Department. January 9, 1901.)

1. PUBLIC LANDS—SALE—FAILURE OF TITLE—REFUNDING PURCHASE PRICE—EVIDENCE.

Public Lands Law (Laws 1894, c. 317) § 5, provides that whenever the state's title to land granted under its authority fails, and a legal claim for compensation therefor is preferred, the land commissioners shall direct the repayment of the original purchase money. Tax Law, § 140, provides that, if the comptroller shall not discover that a tax sale was invalid until after a conveyance of the land, on application of any person having an interest therein at the time of sale, and on proof thereof, he shall cancel the sale and refund the purchase money. *Held* that, on application for refunding of the purchase moneys for land because of an alleged failure of title, the comptroller's certificate of the cancellation of tax sales of such land is insufficient proof of failure of the state's title, where the applicant was not the purchaser at the tax sale, but the land was bid in by the comptroller, the conveyance made to the state, and the land subsequently sold as unappropriated land.

2. SAME—LEGAL CLAIM FOR COMPENSATION—QUITCLAIM CONVEYANCE.

Under Public Lands Law (Laws 1894, c. 317) § 5, providing for the refunding of the purchase money of land bought from the state, the state's title to which has failed, when a legal claim for compensation is preferred, a claim by the purchaser of land conveyed by the state without warranty of title for a refund of the purchase price because of failure of title is not such a "legal claim" as authorizes the commissioners to direct the refunding of the purchase money, since the patent conveyed only such interest as the state had.

Certiorari to the board of commissioners of the land office, commanding them to certify their proceedings relative to the denial of the application of the people, on relation of Amos C. Hall, to such board for the refunding of money by reason of the alleged failure of the state's title to land granted under its authority to the relator. Determination of commissioners confirmed.

In the months of August and September, 1891, at a public sale held by the state engineer and surveyor pursuant to a resolution of the commissioners of the land office, the relator purchased the title of the people of the state to 27 lots of land in the county of Kings, paid the purchase price therefor, and on August 6th and September 14th, 17th, and 29th of that year letters patent therefor were issued to the relator. These lots of land had been acquired by the state at the comptroller's tax sales, and had been conveyed thereon to the people of the state of New York. The letters patent issued to the relator for these lots read as follows: "The People of the State of New York, by the Grace of God Free and Independent, to All to Whom These Presents shall Come, Greeting: Know ye that we have granted, released, and quitclaimed, and by these presents do grant, release, and quitclaim, unto Amos C. Hall, all the right, title, and interest acquired by us from or through the sale for taxes made by the comptroller of this state in the year ——— in and to the premises described as follows, viz." At their conclusion the letters patent contained the following further provision: "These presents shall in no wise operate as a warranty of title." After the relator's purchase his title to one of the lots was disputed on the ground of alleged defects and irregularities of the assessment and tax levy for which the lands were sold, and an action was brought in the supreme court by one Hagner, claiming to be the owner of this lot, to determine the validity of the title, in which action a judgment was recovered against the relator, declaring the tax sales invalid. Thereafter an application made by the relator to the comptroller for the cancellation of the tax sales of all of the lots was granted by the

comptroller    The relator thereafter filed with the commissioners of the land office an application for a refunding to him of the several amounts paid by him to the state for the said lands, claiming that the title thereto had failed, and in support of his application submitted the certificate of the comptroller to the effect that he had canceled the tax sales of said lots, a certificate of the register of Kings county that the relator had not parted with the title of the lots, minutes of the proceedings had before the comptroller in relation to the cancellation, a conveyance from himself and wife to the people of the state of the lots in question, and an affidavit that he had not since the sale to him sold or contracted to sell his interest in the premises. The commissioners denied his application, and this proceeding was instituted to review their determination.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Griffin & Ostrander (George N. Ostrander, of counsel), for relator.
John E. Mason, Dep. Atty. Gen., for respondents.

EDWARDS, J.    The application of the relator to the commissioners of the land office for the refunding to him of the purchase moneys paid by him to the state for the patents to him of the lots in question was based on the provisions of section 5 of the public lands law (Laws 1894, c. 317), which reads as follows:

"Whenever the title of the state to lands granted under its authority fails, and a legal claim for compensation on account of such failure is preferred by any person entitled thereto, the commissioners of the land office shall direct the payment of the original purchase moneys which may have been paid to the state by such person, with interest at the rate of six per cent. from the time of such payment to be paid out of the treasury on the warrant of the comptroller."

The duties of the commissioners under this section of the statute were judicial in character, and required them to determine three questions:

"(1) Had the title of the people failed?    (2) Did a legal claim for compensation exist?    (3) Was the claim presented by the person entitled thereto?"

It was the duty of the commissioners to determine these questions "upon satisfactory evidence tending to establish the facts making it their duty to refund."    People v. Commissioners of Land Office, 149 N. Y. 26, 43 N. E. 418.    No evidence was produced before the commissioners by the relator that the title of the state to the lands granted to him had failed.    His sole reliance to establish this important fact was the certificate of the comptroller of the cancellation of the tax sales.    This certificate was not evidence as an adjudication on the question to be determined by the commissioners, as to whether the title of the state to the lands granted had failed.    The comptroller had no jurisdiction to make the cancellation.    His only authority to cancel sales is such as is derived from the statute.    The statute giving him that authority (section 140, Tax Law) provides that:

"If he [the comptroller] shall not discover that the sale was invalid until after a conveyance of the lands sold shall have been executed he shall, on application of any person having any interest therein at the time of the sale, on receiving proof thereof, cancel the sale, refund out of the state treasury to the purchaser, his representatives or assigns, the purchase-money and interest thereon."

The intention of this statute is to vest the comptroller with power to make restitution to purchasers at tax sales where the title of the property sold is invalid, and the comptroller has no jurisdiction to make cancellation except on the application of the purchaser at the tax sale. People v. Chapin, 105 N. Y. 314, 11 N. E. 510; Same v. Roberts, 144 N. Y. 234, 39 N. E. 85; In re Olmstead, 11 Misc. Rep. 700, 32 N. Y. Supp. 1124. The statute expressly provides that the application must be made by a "person having any interest therein at the time of the sale," and the relator is not within this provision. It is not claimed that at the time of the sale he had any interest whatever in the lands in question. He was not a purchaser at any tax sale. The lands were bid in at the tax sales by the comptroller for the state, the conveyance was made to the people of the state, and the lands were subsequently sold as unappropriated lands to the purchaser at a public sale by the state engineer. For this reason there was an entire absence of any proof furnished by the relator to the commissioners of the land office on the very important question as to whether the title of the state to the lands granted to the relator had failed. Nor do the minutes of the proceedings had before the comptroller, which were presented to the commissioners of the land office, show that any evidence whatever of the failure of the title to the lands in question was produced before the comptroller. Although no evidence was produced before the commissioners that the title to one of the twenty-seven lots had been decided adversely to the relator in the suit brought against him by Hagner, the return of the respondents admits that to be a fact, and as to that lot the right to a refund might not be entirely free from doubt if the relator had also shown a "legal claim for compensation." Although the respondents' counsel on the argument has raised the question as to the want of any proof introduced before the commissioners of the invalidity of the title to the lots, it appears from the report of the attorney general to the board, adopted by the board, that the ground for refusing the application of the relator was the fact that the letters patent to him were quitclaims, under which there was no legal liability upon the part of the state; and I think that on this ground the application was properly denied. The power of the commissioners of the land office to direct the refunding of purchase moneys is purely statutory, and they have no authority to refund, except as therein provided. Section 5 of the public lands law provides for refunding only when "a legal claim for compensation" is preferred. The public lands law, which authorizes the commissioners of the land office to direct the sale of unappropriated lands belonging to the state, and to issue letters patent to the purchasers thereof, provides that "all letters patent shall be in such form as the commissioners direct." Section 4, Public Lands Law. This section is a re-enactment of the Revised Statutes. Under this provision the commissioners issued to the relator letters patent in the form which had been adopted by the board. This form is merely a quitclaim. It contains no covenants, and expressly provides that "these presents shall in no wise operate as a warranty of title." The effect of these letters patent was to convey to the relator only such interest in the land as the grantor had.

There was no implied covenant of warranty, and in case of a failure of title the grantee was without any remedy against the grantor. 2 Rev. St. (9th Ed.) p. 1812, § 140; Murray v. Ballou, 1 Johns. Ch. 577; Burwell v. Jackson, 9 N. Y. 541; Mayor, etc., v. Mabie, 13 N. Y. 158. It was, as we have seen, the duty of the commissioners, under the statute, to decide whether a "legal claim" for compensation was preferred by the relator. There is no statute, other than this, providing for the refunding of the purchase money to a purchaser of unappropriated lands. The mere fact of a purchase of lands to which the state has no title does not entitle the purchaser to compensation. His remedy, if any, is under his deed. The "legal claim" mentioned in the statute is clearly a claim which is good or valid in law,—such a claim as would afford a remedy to a grantee in a deed from a private person. It is clear that, if the relator held a deed of lands in this form from a private person, he would be without a remedy for the purchase money in case of failure of title; and I think, within the meaning of the statute, he had no such legal claim against the state as would authorize the commissioners to direct the refunding to him of the purchase money.

The determination of the commissioners should be confirmed. All concur; SMITH, J., in result.

Determination of the commissioners of the land office confirmed, with $50 costs.