WILLIAM W. WHEELER, Respondent, v. THE STATE OF NEW
YORK, Appellant.

1. CONSTITUTIONAL LAW — PAYMENT BY THE STATE OF PRIVATE
CLAIMS, FOUNDED UPON MORAL OBLIGATION.   Chapter 767 of the Laws
of 1900, authorizing the Court of Claims to determine a claim in conse-
quence of the cancellation, annulling and setting aside of the letters
patent executed to claimant and to render judgment against the State
therefor, is not unconstitutional because it provides for the determination
and allowance of a private claim not founded upon a legal liability.   The
legislature may validate and provide for the payment of illegal private
claims, if they are supported by moral obligation and founded upon
justice, without violating any constitutional provision.

2. SAME.   Where the state sold not merely its right, title and interest
to a parcel of land but the land itself, and conveyed it by letters patent,
which contained no covenants but an express stipulation that the convey-
ance should " in no wise operate as a warranty of title," and it turns out,
that by reason of the error of a state officer which no diligence upon the
part of the purchaser could have discovered, the title is bad, and he is
ejected from the land, the mere receipt and retention by the state of
money for which it had given no consideration, would seem to create a
sufficient claim in equity for a refund and authorize its recognition and
payment; but in this case there is the additional reason for such recogni·
tion and payment, by reason of the fact that under the Public Lands
Law (L. 1894, ch. 317, § 5) providing that where the title of the state to
lands granted under its authority fails, there shall be refunded to any one
presenting a legal claim for compensation the purchase money with
interest, and the purchaser is entitled to such refund, in the absence of
anything in the conveyance showing an intention to exclude him from
the benefit of such provision.   An award therefor upon a claim presented
under the Enabling Act for the purchase price of the land from which the
purchaser had been evicted, with interest and for the costs and expenses
incurred by him in resisting eviction, is properly made.   He is not entitled,
however, to the increased value of the land at the time of his eviction, and
an award embracing this item must be modified accordingly.

*Wheeler* v. *State of New York*, 118 App. Div. 913, reversed.

(Argued December 5, 1907; decided December 20, 1907.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the third judicial department, entered
March 12, 1907, affirming a judgment in favor of plaintiff
entered upon an award of the Court of Claims.

The nature of the claim and the facts, so far as material, are stated in the opinion.

*William S. Jackson, Attorney-General* (*Timothy I. Dillon* of counsel), for appellant.　The claimant had no cause of action against the state unless it is created by the Enabling Act. (*People ex rel. Hall* v. *Woodruff*, 57 App. Div. 342.)　If the Enabling Act be construed to give to the claimant a right of action against the state where none existed before, it is void as violative of the Constitution. (Const. of N. Y. art. 3, § 19.) The court erred in allowing plaintiff's claim.　(*Cole* v. *State*, 102 N. Y. 48; *O'Hara* v. *State*, 112 N. Y. 146; *Cayuga Co.* v. *State*, 153 N. Y. 279; *A. B. N. Co.* v. *State*, 64 App. Div. 223; *W. I. B. Co.* v. *Town of Attica*, 119 N. Y. 204.)　If it was the intention of the legislature by chapter 767 of the Laws of 1900 to deprive the state of the defense of lack of warranty in the conveyance, then the act is unconstitutional. (*People ex rel. Purdy* v. *Comrs. of Highways*, 54 N. Y. 276; *People* v. *Allen*, 42 N. Y. 378; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 130 N. Y. 88; Const. N. Y. art. 3, § 20.)

*John P. Kellas* for respondent.　The legislature has power to waive defenses on the part of the state, especially when the circumstances show moral obligation, as in this case, to restore the money received because it was unable to deliver that which was sold.　(*W. I. B. Co.* v. *Town of Attica*, 119 N. Y. 204; *O'Hara* v. *State*, 112 N. Y. 146; *Coxe* v. *State*, 144 N. Y. 396; *Tifft* v. *City of Buffalo*, 8 N. Y. 204; *Matter of Sackett Street*, 74 N. Y. 95.)　By the act sending respondent's claim to the Court of Claims the legislature, recognizing the justice of the claim, waived any legal defense of lack of warranty of title, if any existed, and enacted that the court determine the damages sustained by claimant.　(L. 1900, ch. 967; *Wallach* v. *Riverside Bank*, 118 App. Div. 238; *Burwell* v. *Jackson*, 9 N. Y. 535; *Leggett* v. *M. L. Ins. Co.*, 153 N. Y. 398; *Delevan* v. *Duncan*, 49 N. Y. 485; *Vought* v. *Williams*, 120 N. Y. 253; *Heller* v. *Cohen*,

154 N. Y. 300; *Snyder* v. *Plass*, 28 N. Y. 476; *People* v. *Mitchell*, 35 N. Y. 551; *Town of Duanesburg* v. *Jenkins*, 57 N. Y. 178; *Williams* v. *Town of Duanesburg*, 66 N. Y. 137.) In consequence of the failure of the state's title, claimant is entitled to a refund under section 5 of the Public Lands Law. (*People ex rel. Ostrander* v. *Chapin*, 105 N. Y. 309; *O'Hara* v. *Kelsey*, 60 App. Div. 610; *Rickert* v. *Snyder*, 9 Wend. 415; *Hunt* v. *Raplee*, 44 Hun, 149; *Hymes* v. *Esty*, 133 N. Y. 348.)

CULLEN, Ch. J. In 1893 the forest commission, under provisions of law, advertised for sale, with other wild lands in the Adirondacks, a tract of 2,900 acres, for which the respondent bid the sum of $5.57 an acre. His bid being the highest was accepted. Before the sale was consummated it was discovered that the tract being within twenty miles of Clinton prison its sale was unauthorized, whereupon an act was passed by the legislature (Laws 1894, ch. 209) which confirmed the sale and directed the execution to respondent of the necessary deeds of transfer upon his payment of the purchase money. The respondent paid the proper sum and received from the state a patent executed by the governor whereby the people of the state granted, released and quitclaimed unto him the tract in question. The patent concluded with this provision: " And these presents shall in no wise operate as a warranty of title." The respondent entered into possession of the premises and shortly thereafter ejectment suits were brought against him by former owners of the land to recover parts of the tract so conveyed to him. He defended these suits but was unsuccessful and by the judgments recovered by the plaintiffs therein he was ejected from 320 acres. It appeared on the trial of those actions that the title of the state had been acquired by sales for unpaid taxes. The defect in the proceedings was this: The lands of the plaintiffs in those suits had been assessed together with other lands which belonged to the state as a single tract and a tax for a single amount levied upon the whole. At the sale, upon the theory that

the lands belonged to the state, the comptroller, claiming to act under the provisions of section 66 of chapter 427 of the Laws of 1855, declined to receive bids from parties attending the sale, but sold the land to the state for the amount of the tax. This was held to be an illegal appropriation of the lands of the plaintiffs and to confer no title thereto on the state. This illegality in the conduct of the sale did not appear on any records in the comptroller's office or elsewhere, but was proved by the testimony of witnesses who attended the sale. After the respondent had been thus ousted from the said 320 acres an act was passed by the legislature (Laws 1900, ch. 762) which conferred upon the Court of Claims power to hear, audit and determine the claim of the respondent against the state "in consequence of the cancellation, annulling and setting aside of the letters patent executed to him * * * and to make an award and render judgment therefor against the state and in favor of said claimant." Thereupon the respondent presented to that court a claim for the purchase price of the land from which he had been evicted, with interest, the costs recovered against him in the two ejectment suits and the expenses incurred by him in defending the same, and for $12.50 an acre for loss of profit. On the first hearing the Court of Claims rendered judgment for the state, holding that the respondent had no valid claim. This was reversed by the Appellate Division and a new trial awarded. ( *Wheeler* v. *State of New York,* 97 App. Div. 276.) On the second trial the respondent recovered judgment which, having been affirmed by the Appellate Division, is now brought for review by this court.

The principal question in the case is the validity of the act of 1900. It is contended by the learned attorney-general that if the act is to be construed as giving the claimant a right of action where none existed before it violates section 19 of article III of the Constitution of the State, which provides that the legislature shall neither audit nor allow any private claim, and that if it was the intention of the legislature to deprive the state of the defense that there was no

covenant of warranty in the conveyance, the statute in effect appropriates money for a private purpose and is ineffective, not having received the assent of two-thirds of the members of each branch of the legislature, as required by section 20 of the same article.    These constitutional provisions have recently been several times before this court.    In *Cole* v. *State of New York* (102 N. Y. 48) a statute of this state had provided for harbor masters' exacting fees from vessels using the wharves in the city of New York, out of which their compensation and their expenses should be defrayed.    These provisions were held unconstitutional by the Supreme Court of the United States, and the fund for the payment of the harbor masters consequently failed.    Thereupon a statute was passed authorizing the Court of Claims to award to the harbor masters reasonable compensation for their services and expenditures.    The validity of the statute was upheld, this court declaring that the constitutional provisions did not preclude the legislature from passing a law under which a private claim could be recognized or established against the state, however just and equitable it might be, unless it was founded on a legal liability which could be enforced in the courts of justice against an individual or corporation.    *Coxe* v. *State of New York* (144 N. Y. 396) is to the same effect.    In *Wrought Iron Bridge Company* v. *Town of Attica* (119 N. Y. 204) it was held that the legislature had power to legalize and validate a claim supported by a moral obligation and founded in justice against a town, although it had previously been declared invalid for technical defects despite the constitutional provision forbidding the appropriation of town moneys to or in aid of any individual.    (Const. art. VIII, sec. 10 ; art. III, sec. 23.)    The question, therefore, presented is, had the respondent such an equitable claim against the state for the refund of the purchase money it had received from him on the sale of land to which the state had no title and from which its grantee was ejected as to support the statute. That, as the deed contained no covenants, an action against a private grantor would not lie is conceded.    An executory

contract to give "a good and sufficient conveyance of land" requires the grantor to convey a good title, as well as to deliver a conveyance proper in form.   But after the contract is executed and the conveyance accepted, the grantee must rely solely on the covenants in his deed.   If his deed contains no covenants, he is without remedy either for eviction or incumbrance.   (*Burwell* v. *Jackson*, 9 N. Y. 535; *Sandford* v. *Travers*, 40 N. Y. 140.)   Such being the general rule, and the conveyance to the plaintiff containing no covenants, some of our number are inclined to doubt whether the mere receipt and retention by the state of money for which it had given no consideration would create a sufficient claim in equity to authorize recognition of the claim by the legislature and a direction for its payment.   There is, however, this further fact in the case.   The defect by reason of which the title failed was the misconduct or error of the state officer, which no diligence on the part of the purchaser in the examination of the title could have discovered.   The case before us, however, does not rest on this equity alone.   Ever since the Revised Statutes there has existed a provision of law that where the title of the People to lands granted under their authority fails, there shall be refunded to any one presenting a legal claim for compensation for such failure the purchase money, with six per cent interest (1 R. S. p. 198, sec. 6), a provision now found in the Public Lands Law (sec. 5).   While the respondent received no covenants, he was entitled to the benefit of this statutory provision, unless the form of the conveyance is such as to show a clear intention to exclude him from any right thereunder.   We think there was no such intent as disclosed.   The patent is not in terms a mere quitclaim, but purports to grant the premises.   The lands themselves were offered for sale by the commissioners, not merely the right, title and interest of the state therein. At any time before the acceptance of the deed had the respondent known of the defect he might have refused to consummate the sale, because the state was unable to give him what it had contracted to give, a good title to the

lands agreed to be sold. The provision in the patent that it should in no case operate as a warranty of title undoubtedly relieved the state from any obligation as warrantor to defend the title of its grantee, but it did not operate to deprive the grantee of the lesser benefit created by the statute, a refund of the purchase money and interest. The case is plainly distinguishable from the two decisions of the Appellate Division cited by the learned attorney-general. In *People ex rel. Hall* v. *Woodruff* (57 App. Div. 342) the granting words of the patent were the same as those before us, to wit, grant, release and quitclaim, but the subject of the grant was very different; it was " all the right, title and interest acquired by us from or through the sale for taxes made by the Comptroller * * * in and to the premises described as follows." In that case the People assumed to sell not the lands but merely their right, title and interest to them, whatever it might be. The case was similar to that of a sale by a sheriff on execution. It was properly held that the failure of title created no liability on the part of the state to refund. In *Killam* v. *State of New York* (64 App. Div. 243) the patent did not state any consideration, nor was any consideration for its issue proved on the trial, though on appeal the counsel for the claimant stated that the consideration was the outstanding taxes thereon which were paid to the state. The notice of claim submitted by the appellant under an enabling act (Laws 1897, ch. 155) did not refer to the alleged consideration, if there were any, but sought to recover the value of the land at the time of eviction with expenses and costs for defending the suit.

But while we thus uphold the validity of the statute and the claim of the respondent made thereunder, we think an error was committed on the trial for which the judgment must be reversed unless the respondent consents to a reduction. Over the objection and exception of the counsel for the state the respondent was allowed to prove the increased value of the lands at the time of the eviction. This ruling was erroneous, even if the action had been on a warranty, for in

such a case the damages are limited to the purchase money and interest. (*Morris* v. *Phelps*, 5 Johns. 49; *Kinney* v. *Watts*, 14 Wend. 38; *Kelly* v. *Dutch Church of Schenectady*, 2 Hill, 105; Rawle on Covenants, p. 235.) But in this case a warranty was expressly excepted and, therefore, the plaintiff's claim is limited to the amount fixed by the statute or that which would obtain in an action for money had and received, the two being in this case the same, to wit, the amount paid with interest.

The judgment appealed from should, therefore, be reversed and a new trial granted, costs to abide the event, unless the respondent, within twenty days, consents to reduce the judgment of the Court of Claims to the sum of $2,691.42, in which case the judgment as reduced is affirmed, without costs in this court to either party.

O'BRIEN, EDWARD T. BARTLETT, HAIGHT, VANN and HISCOCK, JJ., concur; CHASE, J., not sitting.

Judgment reversed, etc.