## UNITED STATES v. CANADIAN AMERICAN CO., Inc. et al.

### No. C. 11283.

United States District Court
E. D. New York.
Sept. 16, 1952.

Frank J. Parker, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y. (George Taylor, Asst. U. S. Atty., Brooklyn, N. Y., and Homer R. Miller, Special Asst. to the Atty. Gen., of counsel), for United States.

Joseph Jaspan, Brooklyn, N. Y., for the Receiver.

G. Burchard Smith, Nassau County Atty., Mineola, N. Y. (Francis J. Donovan, Deputy Nassau County Atty., Mineola, N. Y., of counsel), for Nassau County.

J. Oakey McKnight, Mineola, N. Y., for Village of Old Westbury.

KENNEDY, District Judge.

This is an action to foreclose income tax liens, 26 U.S.C.A. §§ 3678, 3744. In its present posture the suit involves only the question of priorities of liens. The lien which the plaintiff seeks to foreclose arose on April 1, 1949, as a result of income tax delinquencies on the part of one James A. Wigmore for the calendar years 1943 and 1945 inclusive. The principal amount of these taxes exceeds $400,000, and if the interest and penalties be added the total amount of the lien is in excess of $800,000. Wigmore originally owned land in Nassau

County which, through a number of mesne transfers, finally showed up in the apparent ownership of defendant Westbury Farm and Land Corporation. In the meantime the County of Nassau had been assessing real estate taxes against the property in question, which resulted in a claim of a lien in the amount of $5,437.71, including penalties in the amount of $461.10. Concededly the only portions of this amount which are possibly prior in time to the lien which the government asserts are items respectively of $25.92 and $366.66 which, it is claimed, became liens on January 1, 1949.

On March 15, 1950, as a result of a trial before him the Hon. Peter M. Daly, a Justice of the Supreme Court sitting in Nassau County, filed findings of fact, conclusions of law, and a judgment which are made part of the record here. Judge Daly found in substance that all of the mesne grantees in the chain of title from Wigmore to Westbury Farm and Land Corporation (including that corporation itself) were mere dummies for Wigmore and that at all times he exercised actual ownership, dominion and control of the property. By stipulation of the parties to this suit Judge Daly's findings are "true and correct and were fully supported by the evidence introduced in said case insofar as the issues in that case were concerned". Had the stipulation in question not been made the government asserts (without contradiction) that it could have reiterated before me the evidence upon which Judge Daly based his findings and conclusions, and there is no serious claim by the County of Nassau that this evidence could be successfully controverted. Nor is it urged that there was any fraud or collusion in the trial before Justice Daly. One of the issues and perhaps the main issue in the litigation was the question whether Wigmore was the actual owner of the property, despite the series of transfers which placed paper title in the Westbury Farm and Land Corporation. And, as I have said, Justice Daly found and concluded that at all times the property actually belonged to Wigmore and was subject to the claim of the judgment creditor who brought the action.

■ There is much debate in the briefs concerning whether the state court judgment has the effect of a judgment *in rem*, or else should be recognized on principles of comity. Clearly it is not *res judicata* in the present case. I do not believe that I am required to pass upon contentions of that sort when I have in the record a stipulation that the state court findings and conclusions of ownership and dominion on the part of the taxpayer Wigmore were true and correct and were supported by the evidence. This procedure was adopted by counsel and was obviously designed to avoid the waste of time and of money which would be entailed in a hollow re-presentation of the evidence before Mr. Justice Daly. I see no reason why I cannot adopt his findings and conclusions in the light of that stipulation. And it is unthinkable that the government, as a tax lien creditor here, has on the supporting evidence a case weaker than that of a private judgment creditor there.

If I am right in what I have said, I must, therefore, conclude that at all relevant times Wigmore was the actual owner of the land. And from this it follows that the government's lien attached from April 1, 1949, and is prior in right to the county and village taxes which became liens subsequently.

■ The two small items which accrued prior to the critical date ($25.92 and $366.66) present more difficulty. The government says that these were merely inchoate liens never perfected by the segregation of any property. But I am persuaded that under the Nassau County Code these liens are not merely inchoate until there has been a sale or a seizure. The question is not very thoroughly discussed by counsel and I can find no persuasive decision on the point. However, in an opinion filed on December 13, 1949 (unreported) in bankruptcy proceedings of the Long Island Rail Road, I myself, had occasion to consider the effect of liens arising under the Nassau County Code and reached the conclusion that they are not in the same class as the so-called "inchoate" liens of which the government speaks. I recognize, United States v. Security Trust and Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 95

L.Ed. 53, that the quality and priority of state and county liens is a question of federal law. But Nassau County tax liens are in no way similar to attachment liens, or even to tax liens under different systems, which may never ripen into an interest in the property. At the very instant the assessment is made, it seems to me, the county has an interest in the property which it can pass to the purchaser of the tax lien certificate. I do not believe that such an interest can be cut off by a subsequently accruing federal income tax lien. The record discloses that the two assessment-liens preceding in time the government"s lien were sold on December 8, 1949, one to Sadie Schwartz ($25.92), the interest rate being 1%, and the other to Hempstead Management Company ($366.66), the interest rate being 2%. I hold that both of these liens are prior in right to that of the government, and that they should bear interest in accordance with the Nassau County Code at the rate bid by the purchasers. It is true that there are cases indicating that interest is not to run on tax liens in certain types of insolvency proceedings. But this is not such a proceeding. I view the situation as if the purchasers of these tax liens had acquired mortgages on the property on January 1, 1949, and that they are entitled to interest from that date to the date when the liens are discharged.

■ I turn now to an additional contention raised by the County of Nassau. It was not made a party to the action until August 13, 1951. Prior to that time and on April 25, 1951, a receiver appointed by the court in this very action had exposed the real estate to sale and had secured the sum of $116,000 for it. On August 13, 1951, Judge Abruzzo verbally confirmed that sale, and on that very same day the County of Nassau was made a party to the suit. The formal order approving the sale was entered on August 15, 1951. D.C., 100 F.Supp. 721. It was never challenged by the County of Nassau, which now urges that the effect of the sale was to preclude the United States from asserting its lien against the proceeds of the sale, Nassau County not having been a party to the suit when the sale was had. I have a little difficulty in following this

argument. For if, as it now asserts, the county's lien for taxes is good because the paper title to the property was not in the taxpaper and it was impossible to pierce the corporate veil, then Nassau County was in no way injured by the sale, the proceeds being ample to discharge its lien. If, on the other hand, as I have held, Wigmore, the taxpayer, was the real owner and the property was subject to the tax lien with the possible exception of the taxes accruing before April 1, 1949, then still the county was in no way injured by the sale prior to its becoming a party to the record. In other words, the argument now presented by the county, if adopted, could lead only to a useless invalidation of the sale. This is unthinkable for several reasons, notably because my colleague Judge Abruzzo has already approved it and that order is the law of the case. It was never challenged by the county, and even if another sale were possible the legal position would not be significantly changed.

■ At one stage of the case there seemed to be some disposition on the part of the County of Nassau to challenge the right of the government to make an assessment after Wigmore, the taxpayer, had extended the time within which an assessment could be made. This was a matter purely between the taxpayer and the government and I fail to see how the rights of anyone else could be enlarged or whittled down by the procedure used.

Since all other issues in the case have been disposed of except the issue of priority, the plaintiff is entitled to a judgment providing substantially as follows: (1) out of the funds in his hands the receiver is to discharge appropriate administrative expense and costs, including the costs of the County of Nassau; (2) the receiver is to pay or set aside or tender an amount sufficient to discharge the January 1, 1949 liens with interest; and (3) the balance in the receiver's hands is to be paid to the government on account of the income tax lien. Such a judgment should be promptly submitted.

I have not mentioned the Village of Westbury because I am not able to find any basis for a claim on its part that it was the owner of liens accruing prior to April 1, 1949. It

209

is not, therefore, entitled to costs. I am conscious of the fact that the present certificate holders are not parties to this action but I feel sure that some procedure can be taken under the Nassau County Code to discharge the two prior county tax liens even though the present holders are not before the court.

Submit judgment.