Burke I. Burke, J.
The plaintiff Buffalo Savings Bank and the defendant United States of America have appeared before this court on the return day of a motion made by plaintiff for a resettled judgment of foreclosure and sale. A review of the prior proceedings in this matter may serve to clarify the issues presented.
The action was started by plaintiff in October, 1958 to foreclose a first mortgage. The defendants in the action, in addition to the mortgagors, included the holder of a second mortgage, various judgment creditors, and the United States of America, which was made a party by virtue of a Federal tax lien filed subsequent to the recording of the first mortgage but prior to the accrual of certain local real estate taxes, unpaid at the time of the commencement of the action, and remaining unpaid to the present time.
The complaint requested a judgment establishing the amount due for principal and interest on the first mortgage, together with any moneys advanced by the mortgagee to pay local taxes, and that the mortgaged premises be sold to satisfy these amounts and the cost and expenses of the foreclosure action, and that all defendants made parties to the action be foreclosed from any interest in the property. The United States of America served an answer requesting that the judgment of foreclosure require the Referee to pay from the proceeds of sale the tax lien of the United States of America prior to the payment of any other unpaid taxes and other charges.
Thereafter, the plaintiff moved for summary judgment and this court granted the motion for summary judgment on the basis that no question of fact had been raised by the pleadings since the lien dates and amounts had been admitted and the only dispute was a question of law as to the priorities to be *445 determined upon the agreed facts. At that time, the court also directed entry of a judgment providing that the mortgaged premises be sold by the Referee subject to unpaid local municipal real estate taxes but free of the liens of all other defendants in the action, including United States of America. (17 Misc 2d 564.)
The defendant United States of America appealed from this order and the Appellate Division reversed the judgment of foreclosure insofar as the same had been appealed from by the United States and remitted the case to this court for further proceedings in accordance with the opinion of the Appellate Division. (11A D 2d 158.)
The opinion notes that a sale of the mortgaged premises, subject to local taxes, while within the power of the trial court, was not appropriate under the particular circumstances and suggested that the premises be sold free and clear of all liens, and that the municipal lienors be made parties to the action. The municipal lienors have not been made parties to the action for the following reason: upon argument of the present motion, attorneys for the plaintiff and the defendant, United States of America, discussed the matter and it was indicated that if the municipal lienors were made parties, they would be in a position like that of a first mortgagee, made a party to a second mortgage foreclosure action; that is, such lienors would be entitled to have the action dismissed as to them or, in the alternative, to judgment of the court directing that the premises foreclosed be sold subject to their liens, and that no useful purpose would be served.
There remains again the question of the form of judgment directing the sale, the answer being stricken under the authority of Aquilino v. United States (3 N Y 2d 511). The plaintiff has requested a judgment of foreclosure and sale pursuant to section 1087 of the New York Civil Practice Act, one directing that the Referee sell the premises and pay out of the proceeds taxes, assessments and water rates which are liens upon the property sold. Under this form of judgment, any such taxes paid by the Referee would, pursuant to section 1087 of the Civil Practice Act, be deemed expenses of the sale, which have priority over all other claims.
The defendant United States of America has requested a form of judgment directing that the proceeds of sale be apportioned to the payment of expenses of the sale (except local taxes) and the allocation of the remaining proceeds to the payment of the plaintiff’s mortgage and all other liens in order of time, but that if the local taxes are not fully paid after such allocation, *446 that the balance of the local taxes be paid out of the proceeds allocated to the various lienors (excepting the United States of America) in inverse order of their priority in time.
The plaintiff relies upon Rikoon v. Two Boro Dress (9 Misc 2d 591, mod. 8 A D 2d 986 [2d Dept.], mod. on reargument 9 A D 2d 783, motion for leave to appeal denied 7 N Y 2d 711), while the defendant United States of America relies upon United States v. New Britain (347 U. S. 81 [1954]) as applied in Dunkirk Trust Co. v. Dunkirk Laundry Co. (17 Misc 2d 298) and Stadelman v. Hornell Woodworking Corp. (172 F. Supp. 156 [U. S. Dist. Ct., W. D., N. Y., 1958]) and also Prudential Savings Bank v. Prieur (Supreme Ct., Erie County, 1959, not reported). The plaintiff’s contention is also supported by Kronenberg v. Ellenville Nurseries & Greenhouses (22 Misc 2d 247 [Supreme Ct., Ulster County, 1960]).
As the Appellate Division noted, it is only in the event that the net proceeds from the sale of the premises are in excess of the amount owing on the plaintiff’s mortgage and other liens superior to the Federal tax lien, but less than the amount needed to pay all liens in full, that the question of priority of the Federal tax lien over local taxes (if any) will arise. In its previous decision (similar to that of the Supreme Court, Nassau County, in Feinstein v. Earl, N. Y. L. J., July 5, 1960, p. 8, col. 2), this court directed that the premises be sold subject to local real estate taxes.
Since, however, a sale, subject to local taxes, now may not be directed, the question remains whether the court should direct the entry of a judgment of foreclosure and sale in the usual form under section 1087 of the New York Civil Practice Act, or whether it should grant the special form of judgment requested by the United States of America.
The authority principally relied upon by the defendant United States of America is the case of United States v. New Britain (347 U. S. 81, supra [1954]). That case involved the foreclosure by judgment sale of two mortgages on real property located in the State of Connecticut. The premises subject to the mortgages brought a gross sum of some $28,000 on the sale and pursuant to Connecticut practice, the gross proceeds of the sale were paid into court, and an application made for a supplementary judgment directing the disposition of these proceeds. There were claims totaling $31,000 for expenses of the sale, the two mortgages, a judgment of record and statutory tax liens asserted by the municipality and by the United States. The court below had directed that from the proceeds of sale, the expenses, the local municipal tax liens, the mortgages, the *447 judgment liens and the United States liens be paid in that order, reasoning that the mortgagee could have paid the delinquent local taxes and added the amount thereof to the debt covered by the mortgage liens, which would then have priority over the Federal lien, and stating that it did not believe Congress intended, by giving mortgagees and certain judgment creditors priority over Federal tax liens, to supersede State laws making certain municipal taxes superior in turn to such mortgages and judgments, and that, accordingly, this Congressional intent was to subordinate Federal liens to such other encumbrances as have priority over the mortgages and judgment liens to which the Federal liens are expressly subordinated by Federal statute.
In reversing, the United States Supreme Court stated that it did not agree, holding that the United States was not interested in whether the State received its taxes and water rents prior to mortgagees and judgment creditors since that was a matter of State law, but that as to any funds in excess of the amount necessary to pay the mortgage and judgment creditors, Congress intended to assert the Federal lien and that there was nothing in the language of the Federal statute to show that Congress intended antecedent Federal tax liens to rank behind any but the specific categories of interest set out therein.
The various Connecticut statutes cited by the United States Supreme Court in the New Britain case involved either the priority of local municipal taxes or the privilege given to the mortgagee to pay such preferred items and add them to the principal due on the mortgage.
However, an examination of the general statutory pattern of mortgage foreclosure procedure in the State of Connecticut reveals that both at the time of the decision of the New Britain case and at present, when a mortgage is foreclosed in Connecticut, the proceeds of the sale of the premises are brought into the court directing the sale, and that thereafter a supplemental judgment is rendered specifying the parties who are entitled to the proceeds of the sale and the amount to which each is entitled. These parties include the plaintiff, although if the plaintiff purchases the premises at the foreclosure sale, he need only bring into court the excess of the sale proceeds over the amount due on his judgment debt, interest and costs. It is also provided that the plaintiff in a foreclosure action be paid his judgment for principal and interest and his costs, but these costs are not defined and the statute indicates they are to be the costs usually allowed to successful parties. (See Conn. Gen. Stat. [1958 Rev.], Vol. VIII, tit. 49, ch. 846, §§ 49-27, 49-29.)
*448 By comparison, the New York practice involving foreclosure of mortgages provides, in section 1082 of the Civil Practice Act, that in an action to foreclose a mortgage upon real property, if the plaintiff becomes entitled to final judgment the court must direct the sale of the mortgaged premises, or such portion thereof as is sufficient to discharge the mortgage debt, the expenses of the sale, and the costs of the action, and all surplus moneys arising from the sale of the mortgaged premises shall be deposited by the Referee within five days after the sale shall have been held, subject to the further order of the court. Any person claiming the surplus moneys arising upon the sale of the mortgaged premises must initiate a separate surplus moneys proceeding.
Section 1087 of the Civil Practice Act expressly provides that where a judgment rendered in an action to foreclose a mortgage upon real property directs the sale of the real property, the officer making the sale must pay out of the proceeds, unless the judgment otherwise directs, all taxes, assessments and water rates which are liens upon the property sold and redeem the property sold from any sales for unpaid taxes, assessments or water rates which have not apparently become absolute. The sums necessary to make those payments and redemptions are deemed expenses of the sale.
It appears there is a distinction between the procedure mandated by the Connecticut statutes and that mandated by the New York statutes. The Connecticut statutes cover disposition of the proceeds of sale, which are analogous to but not identical with the surplus moneys resulting upon a sale in New York.
The form of judgment requested by the defendant United States of America goes beyond what is provided for by New York procedure and would, in effect, initiate a surplus moneys proceeding on behalf of the United States of America prior to the sale, which might or might not produce surplus moneys. The United States seeks this special form based upon the assertion that the normal form of judgment would vitiate its claimed priority and that this would be illegal under the Federal law which the United States claims is controlling in this instance. It is the court’s opinion that this is a matter of State procedure, and that under the recent decisions in United States v. Brosnan (363 U. S. 237 [1960]) the United States Supreme Court stated it was desirable to adopt as Federal law, State law governing divestiture of Federal tax liens except to the extent that Congress may have entered the field, and accordingly refused to fashion a Federal rule of uniformity respecting the extinguishment of Federal junior liens under State procedures. In holding, *449 in these particular cases, that Federal liens could be effectively extinguished by nonjudicial foreclosures of mortgages and deeds of trust, it would seem that the court indicated there could be a permissible variation of effect upon Federal tax liens depending upon the methods of State procedure utilized by the security holder. These statements are consonant with the form of judgment granted in the Rikoon and Kronenberg cases cited (supra).
Apart from the legal factors, policy considerations include the following:
The form of judgment requested by the defendant United States of America would jeopardize the standing of two mortgages and judgments recorded prior to the filing of the United States tax lien merely by reason of the accrual of subsequent real estate taxes. Such a circumstance, subsequent to the docketing of a Federal tax lien, should not affect the standing of prior recorded liens, nor furnish the Federal Government with an advantage over other creditors.
The effect of such a determination would be to spur mortgagees to foreclose immediately upon a tax default, or require substantial escrow deposits by mortgagors to secure payment of subsequent real estate taxes.
And, if the Government’s contention were sustained, it could lead to the paradoxical result, in other cases factually similar, wherein United States Government agencies are cast as bond and mortgage guarantors, that a mortgagee, in effect, would be compelled to pay a mortgagor’s income tax to one department of the Federal Government, Internal Revenue, and then be reimbursed by a different department of the Federal Government such as the Veterans’ Administration or the Federal Housing Administration.
As it appears that there is a meaningful difference between the Connecticut procedures involved in the New Britain case and the statutory procedural scheme of New York set forth in the Civil Practice Act, that the form of judgment requested by the United States of America is at variance with mortgage foreclosure procedure under New York law, and that upon the authority of the Rikoon and Kronenberg cases, the relief asked by plaintiff should be granted, it is the decision of the court that the plaintiff have a judgment of foreclosure and sale, pursuant to section 1087 of the Civil Practice Act, directing the Referee to pay real estate taxes and assessments from the proceeds of sale as expenses, and providing that the United States of America may redeem within one year of the date of sale.