UNITED STATES of America,
Plaintiff,

v.

MOJAC CONSTRUCTION CORP., Industrial Commissioner of the State of New York, M. F. Hickey Co., Inc., Cosmopolitan Mutual Casualty Company of New York (now known as Cosmopolitan Mutual Insurance Company), Ellis Schwartz, d/b/a Banner Roofing Company, Hardware Mutual Casualty Co. and School District No. 27, Town of Hempstead, State of New York, Defendants,

New York State Tax Commission, People of the State of New York, County of Nassau, State of New York, Town of Hempstead, State of New York, West Hempstead Gardens Water District, West Hempstead, State of New York, Harry Bialick, Milton Aronauer and Long Island Land Research Bureau, Inc., also known as L. I. Research Bureau, Additional Defendants.

Civ. No. 18999.

United States District Court
E. D. New York.

Dec. 19, 1960.

Cornelius W. Wickersham, Jr., U. S. Atty., Eastern Dist. of New York, Brooklyn, N. Y., for plaintiff; Irving L. In-nerfield, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

Bailey & Bailey, Long Beach, N. Y., for defendant Harry Bialick; Harold I. Bailey, Long Beach, N. Y., of counsel.

J. Oakey McKnight, Acting County Atty. of Nassau County, Mineola, N. Y., for defendant Nassau County; James F. Niehoff, Deputy County Atty., Mineola, N. Y., of counsel.

ZAVATT, District Judge.

This is an action by the United States to foreclose five tax liens upon three parcels of real property described on the Land and Tax Map of the County of Nassau, State of New York, as lots 5, 61 and 62, block 536, section 33, School District 27. The liens sought to be foreclosed are for unpaid withholding and social security taxes due from the taxpayer-defendant Mojac Construction Corp. Notices of these federal tax liens were filed in the office of the Clerk of the County of Nassau as follows: January 29, 1952 for $15,821.87; August 15, 1952 for $10,733.97; March 2, 1953 for $5,905.40; June 8, 1953 for $8,721.44; and May 22, 1958 for $3,348.10. These federal tax assessments aggregate $44,-530.78.

Mojac was the owner of these three lots when the County of Nassau sold its tax liens on December 3, 1956 for the following unpaid taxes: second half 1955-56 School District taxes; second half 1956 State, County, Town and Special District taxes. The tax liens on lot 5 were purchased by Long Island Land Bureau (coincidentally one of the defendants in this action) for the sum of $28.65. The tax liens on lots 61 and 62 were purchased by one Joseph Harris for $56.23. At the time of the sale of these tax liens the three lots were encumbered by the federal tax liens filed in January and August 1952, and March and June 1953, in the total principal sum of $41,-182.68. Certificates of sale of tax liens (Nos. 3040 and 3041) were subsequently issued by Nassau County to the respective purchasers.

Thereafter, sometime between September 11, 1957 and July 1, 1958, the defendant Bialick acquired these tax lien certificates by assignment from the purchasers. On December 5, 1958, Bialick received from H. Bogart Seaman, Treasurer of the County of Nassau, what is known as a County Treasurer's Deed, executed and delivered pursuant to the provisions of Chapter 272 of the Laws of 1939 of the State of New York and all amendments thereto, hereafter referred to as the Administrative Code of the County of Nassau, or simply the Code. The deed, conveying the three lots, thereafter recorded in the Nassau County Clerk's office on December 15, 1958 in Liber 6473 of Conveyances page 419, contains no covenants.

Bialick, the owner of record, and Nassau County, as a possible holder of tax liens, are defendants in the foreclosure action along with thirteen other named defendants. The following defendants have liens of record, in the amounts indicated below, against one or more of the three lots formerly owned by Mojac and since conveyed to Bialick. (The date is the date when the lien was perfected by filing in the office of the Clerk of the County of Nassau.)

| Defendant | Amount | Date |
|---|---|---|
| (1) Industrial Commissioner of the State of New York: | $2,823.87 | March 24, 1952 |
| | 1,742.79 | May 12, 1952 |
| | 1,646.35 | April 7, 1953 |
| unemployment insurance taxes | 1,764.16 | Jan. 20, 1953 |
| owed by Mojac | 1,461.61 | July 13, 1953 |
| (2) Cosmopolitan Mutual Casualty Co. of New York, a judgment creditor of Mojac | 6,727.11 | Aug. 14, 1953 |
| (3) Ellis Schwartz, a judgment creditor of Mojac | 5,912.17 | June 10, 1953 |
| (4) Hardware Mutual Casualty Co., a judgment creditor of Mojac | 3,634.68 | June 25, 1953 |
| (5) M. F. Hickey Co., a judgment creditor of Mojac | 2,010.90 | Feb. 19, 1953 |
| (6) New York State Tax Commission: other taxes owed by Mojac | 135.40 | July 29, 1958 |

(7) Milton Adenauer, holder of Tax Sale certificate No. 2631 sold by the County of Nassau December 7, 1959 for 1959 full year Town Tax, and 1958/59 full year School Tax, on lot 5.

(8) Long Island Land Research Bureau, Inc., holder of Tax Sale certificate No. 2632 sold by Nassau County on the same date and for the same taxes on lots 61 and 62.

———◆———

The People of the State of New York; School District No. 27, Town of Hempstead; West Hempstead Gardens Water District; and the Town of Hempstead were made additional parties defendant by reason of possible unpaid taxes

Of all the defendants only County of Nassau, Bialick and the Industrial Commissioner have filed answers. The Industrial Commissioner has also asserted a counterclaim and a cross-claim against Mojac. Bialick has asserted a cross-

claim against the County of Nassau, the Town of Hempstead and School District No. 27 of the Town of Hempstead. The School District has answered this cross-claim. The substance of Bialick's cross-claim is that, if his interest in the property is cut off in this action to foreclose the federal tax liens, he is entitled to "the amount of the taxes and assessments sold by the County of Nassau [to Bialick] together with any and all subsequent taxes and assessments paid by * * * Bialick with interest and penalties thereon besides costs and disbursements in this action." These damages are based on the allegations that the County of Nassau sold its tax liens subject only to liens of the County of Nassau and that the Treasurer's Deed was a conveyance of title to the three lots subject only to any liens and encumbrances for County taxes. Bialick further alleges in his cross-complaint that any damages he may suffer will be the result of a misrepresentation on the part of the County of Nassau, which knew, or should have known, that the tax liens sold by the County were subject and subordinate to the federal tax liens. On the argument of the motions about to be referred to, Bialick abandoned this claim for misrepresentation and limits his claim to breach of contract.

Now before the Court are several motions. The County of Nassau has moved for summary judgment on Bialick's cross-claim. The United States has moved to sever the determination of that cross-claim, and for partial summary judgment, limited to a determination of the priority of its earliest lien (that filed January 29, 1952), judgment of foreclosure and sale of the encumbered property, and for further relief related to the requested sale. Since the property when sold is expected to bring far less than the amount of the Government's first lien, the relative priorities of the liens held by the defendants may become academic.

Clearly, the United States' lien for $15,821.87 plus interest filed January 29, 1952 is prior to any other lien or interest asserted here. That concession is specifically made by the Industrial Commissioner whose lien filed May 12, 1952 is next in the line of priorities. The government's lien being first in time is first in right. United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520. Bialick seems to concede that the federal lien was the first perfected, but argues that either the subsequent sale by the County of its tax liens or the conveyance of title in the real property by the County, cut off the federal lien. Of course, this argument is inconsistent with Bialick's theory that the County breached its contract to convey unencumbered title. Granting Bialick the right to rely on inconsistent theories, the argument is nevertheless without merit. Even assuming that an appropriate state proceeding, although inconsistent with the federal procedures for removing clouds upon title as found in section 2410 of Title 28, and section 7424 of Title 26, might cut off a *junior* federal lien (see United States v. Brosnan, 1960, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192; but cf. United States v. John Hancock Mutual Life Ins. Co., 1960, 81 S.Ct. 1, there are two reasons why Bialick's argument falls. Firstly, the government asserts here a *senior* and not a junior lien, and senior liens are a much hardier variety. See United States v. Roessling, 5 Cir., 1960, 280 F.2d 933. In Roessling, a state quiet title action in the nature of an in rem proceeding (brought subsequent to a County tax sale) which purported to cut off and extinguish all pre-existing liens and interests, was held to be ineffective against a first mortgage held by the United States. Section 2410(c) of Title 28 provides the condition upon which a federal senior lien may be foreclosed:

"A sale to satisfy a lien inferior to one of the United States, shall be made subject to and without disturbing the lien of the United States, unless the United States consents that

the property may be sold free of its lien and the proceeds divided as the parties may be entitled."

Bialick does not contend that the United States gave any such consent here. Secondly, as a matter of state law, county tax sales do not cut off sovereign liens. See Riverhead Estates Civic Ass'n v. Gobron, Suffolk Cty.Ct.1954, 206 Misc. 405, 134 N.Y.S.2d 13.

Bialick contends that his argument finds support in the recent case of Buffalo Savings Bank v. Victory, Erie Cty. Ct.1960, 206 N.Y.S.2d 518. But that case deals only with the effect of a judgment of foreclosure and sale upon a junior federal lien. Even on the narrow "procedural" issue with which the court purports to deal, the case is of doubtful authority, however, because the effect of the decision is to prefer local tax claims over prior federal liens, contrary to the teaching of the New Britain case, supra.

█ While not contesting the validity of the federal lien, the parties who have answered have questioned the timeliness of the action to foreclose. An action to foreclose a federal tax lien must be brought within six years from the assessment of the tax or "prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period." 26 U.S.C. § 6502(a) (1954), formerly 26 U.S.C. § 276(c) (1939). In this case, the withholding tax for the third quarter of 1951 (the subject of the Government's lien filed January 29, 1952) was assessed on January 14, 1952, and the action was commenced September 5, 1958, more than six years from the date of assessment. However, between these two dates (on January 16, 1955) the taxpayer, Mojac, submitted an offer of compromise covering, inter alia, the withholding tax for the third quarter of 1951. In making the offer "and as part consideration, thereof" the taxpayer waived "the benefit of any statute of limitation applicable to the assessment and/or collection of the liability sought to be compromised,

and agrees to the suspension of the running of the statutory period of limitation * * * for the period during which this offer is pending * * * and for one year thereafter." An amended offer with the same provisions relating to suspension of the statute of limitations was made February 10, 1956. The offer was rejected September 10, 1956. It is clear therefore that, as to the taxpayer at least, the action is timely brought. The other defendants, however, argue that as to them the action is untimely, on the premise that the agreement contained in the offer to compromise binds only the parties to it. They cite no cases supporting this position, whereas the government relies on the "plain meaning" of section 6502(a), and supporting case law. In this it is clearly correct. An agreement by the taxpayer to suspend the running of the statute of limitations binds not only the taxpayer but also any party to an action to foreclose the tax lien. See United States v. Maddas, D.C.W.D.Pa.1953, 109 F.Supp. 607, 612; cf. United States v. Canadian American Co., D.C.E.D.N.Y. 1952, 108 F.Supp. 206, 208, affirmed per curiam, 2 Cir., 1953, 202 F.2d 751. By virtue of the foregoing the government is entitled to partial summary judgment of foreclosure and sale of its lien filed January 29, 1952.

There remains for consideration the motion of the County of Nassau for summary judgment in its favor and against the defendant Bialick on Bialick's cross-claim against the County of Nassau, School District 27 and the Town of Hempstead. The disposition of this motion requires consideration of Nassau County taxes. The local School and Special District, Town and County taxes, when due and payable, become liens upon the real property against which they are assessed. Nassau County Administrative Code §§ 5–15.0, 5–16.0. "The term 'tax lien' includes: (a) the right of the county to collect taxes, penalties, interests and other charges on the real property affected by such taxes for fail-

ure to pay such taxes, and (b) the lien against such real property for all of the aforementioned items." § 5–24.0, subd. 3. Assessment rolls showing unpaid taxes are returned by the Town Receiver, the primary collecting agent, to the County Treasurer for collection. § 5–23.0. The County Treasurer has a choice of methods for collecting delinquent taxes. He may bring an action "as upon contract", (§ 5–32.0), or he may sell the tax lien. § 5–33.0. "The term 'sale of taxes' or 'sale of a tax lien' includes the sale of the real property affected by such tax lien." § 5–24.0, subd. 4. The former method is rarely, if ever, used and needs no further discussion. Sale of the tax lien is the usual procedure and the sale is conducted yearly in December. §§ 5–35.0, 5–37.0, Laws 1944, c. 718. The sale is preceded by advertisement for a period of three weeks in local newspapers. § 5–37.0. This advertisement contains the name of the owner of the liened real estate, a description of that property, and the amount of unpaid taxes due. This amount includes "all taxes for the year or years advertised, · the interest and penalty on such taxes to the date of the sale and other expenses and charges against the property." § 5–37.0, subd. b. The advertisement of the sale of the lien on the Mojac property follows:

"Notice is hereby given that I shall, on the 3rd day of December, 1956, * * * sell at public auction the tax liens on real estate hereinafter described, unless the owner, mortgagee, occupant of or any other party in interest in such real estate shall pay to the County Treasurer the total amount of such unpaid taxes * * *. Such tax liens will be sold at the lowest rate of interest * * * for which any person * * * shall offer to take the total amount of such unpaid taxes as defined in Section 5–37.0 of the Nassau County Administrative Code. The tax liens are for arrears in school district taxes for the year 1955/56 and/or State, County, Town and Special

District taxes for the year 1956. * * * "

[Here follows a list of the real estate.]

"Such tax liens shall be sold subject to all claims which the County may have thereon for taxes or prior tax liens and subject to the provisions of the Federal and State Soldiers and Sailors Civil Relief Acts.

"The County Treasurer reserves the right, without further notice and at any time, to withdraw from sale any of the parcels of land or premises herein listed.

"The rate of interest and penalty at which any person purchases the tax lien shall be established by his bid. * * *

"Time is of the essence of this sale. This sale is held pursuant to the Nassau County Administrative Code and interested parties are referred to such Code for additional information as to terms of the sale, rights of purchasers, maximum rates of interest and other legal incidents of the sale."

Prior to the published notice of sale, newspaper notice is given to the defaulting taxpayer that a sale of a tax lien on his property is forthcoming. § 5–36.0. The notice of sale contains further notice to the defaulting taxpayer that the "tax lien on such lands and tenements will be sold at the lowest rate of interest * * * for which any person * * * shall offer to take the total amount of such unpaid taxes which are then a lien on such property." § 5–37.0, subd. c. If the defaulting taxpayer or "other party in interest" does not pay the tax within the period stated in the notice of sale, the lien is sold. § 5–39.0, Laws 1941, c. 203.

The purchaser at the sale pays ten per cent down and the remaining ninety per cent within 60 days. § 5–41.0. "Thereupon the county treasurer shall execute to each purchaser * * * a certificate in writing which shall con-

tain: 1. a description of the real property affected by the tax lien * * *. 2. The name of the owner of the real property as it appears on the tax books. 3. The interest and penalty at which such tax lien was purchased. 4. The date of the sale. 5. A statement that the tax lien was sold for unpaid school district, special district, town, county or state taxes, as the case may be. 6. The amount paid for the tax lien. 7. Such other information as the county treasurer shall deem expedient." § 5–41.0. "The term 'certificate of sale' or 'certificate of sale of a tax lien' means the instrument by which the county transfers a tax lien and sells the real property affected by such tax lien." § 5–24.0, subd. 5. So far as is pertinent, the certificate of sale No. 3040 provides:

"This is to certify that at the sale of tax liens and real property affected thereby, for unpaid [taxes] * * * which sale was held pursuant to the provisions of the Nassau County Administrative Code * * * which statutes are by reference made part hereof [Bialick's assignor] purchased the tax lien on the property then and there sold which was assessed to Mojac Const Corp. * * *

"[T]he lien was purchased * * * subject to all claims which the County of Nassau may have thereon for taxes or other liens or encumbrances.

"All liens on property involved in this sale are sold subject to the provisions of the Federal and State Soldiers' and Sailors' Civil Relief Acts.

"After the expiration of the time to redeem, unless sooner redeemed, the holder of this tax sale certificate shall be entitled to pursue the remedies provided in the Nassau County Administrative Code for the enforcement of said sale. * * * "

A holder of a certificate of sale of a tax lien may assign such certificate and the County Treasurer records the same. §§ 5–45.0, 5–69.0. "The term 'holder', 'holder of a tax lien' or 'holder of a certificate of sale of a tax lien' means the purchaser of a tax lien and of the real property affected by such tax lien or if the purchaser has transferred the certificate of sale, a person in lawful possession of such certificate of sale who claims title through the purchaser of such certificate of sale." § 5–24.0, subd. 6. The holder of a certificate of sale of tax liens may pay the subsequent taxes as they accrue. § 5–49.0. Any time after twenty-one months from the date of the tax sale, the holder of the tax lien can give notice that, in three months from the date of the notice, he "shall elect to accept a deed of conveyance of such property or to call his money and foreclose his tax lien." § 5–51.0, Laws 1943, c. 71. Notice is given "to the occupant, owner in fee, trustee, mortgagee, judgment creditor or purchaser at any other county tax sale of a tax lien affecting the same property * * * and any other person having a lien, claim or interest appearing * * * from the records kept by the county clerk, county treasurer, surrogate of the county and receiver of taxes for the town or city in which the property is located." § 5–51.0, Laws 1952, c. 514. The cost of the search of the record thus required becomes an added charge that an interested party must satisfy in order to discharge the tax lien. § 5–50.0. Failure to serve the notice required does not invalidate a subsequent Treasurer's Deed, should the holder elect to take a deed. Rather, it allows the un-notified party to satisfy the lien at any time prior to a judgment in a "bar-claim" action brought pursuant to section 5–57.1, Laws 1939, c. 704. § 5–51.0, subd. g, Laws 1939, c. 704.

If, after three months from the date of such notice, the tax lien is not satisfied and the holder of the lien so elects, "the county treasurer shall execute to the holder of such certificate of sale of the tax lien a conveyance of the real estate on which the tax lien has been sold. This conveyance shall vest in the grantee

an absolute estate in fee, subject to all claims which the county may have thereon for tax or other liens or encumbrances. Such conveyance shall be executed only upon: 1. Performance by such purchaser of the conditions which he is required to perform pursuant to this article. 2. Surrender of such certificate of sale. 3. The taking and paying for by the holder of an assignment of all outstanding prior tax liens held by the county upon the premises. 4. The filing of proof of service of notice upon owners and other interested persons * * *."
§ 5–53.0. So far as is pertinent, the County Treasurer's Deed, conveying lots 5, 61 and 62, provides:

"Witnesseth that Whereas, by and under the provisions of [the Nassau County Administrative Code] the Treasurer of the County of Nassau is authorized and required to advertise and sell real estate upon which taxes * * * remain unpaid, and

"Whereas, default was so made * * * the said Treasurer did cause a list of said lands charged with such taxes * * * to be published * * * and

"Whereas, * * * the said County Treasurer did, on the 3rd day of December, 1956 sell at public auction each of said parcels of land for an amount sufficient to pay such taxes * * *

"Whereas, the said piece * * * of land has not been redeemed within the time prescribed by law * * * and

"Whereas, [Bialick] has assumed all outstanding prior tax liens upon said premises held by the County of Nassau,

"Now, Therefore * * * the party of the first part has granted, released and conveyed * * * to [Bialick] all that lot [described by reference to the tax map] including the right, title and interest of Mojac Construction Corp. * * *.

"Subject to any claims for taxes or for other liens or encumbrances and to any right, title or interest of the County of Nassau founded upon a tax or other lien or encumbrance.

"Subject to the provisions of the Federal and State Soldiers and Sailors Civil Relief Acts. * * *"

When the conveyance is executed, it is presumptive evidence of the regularity of all prior proceedings. After six years this presumption hardens and becomes irrebuttable. § 5–54.0. With the conveyance of title goes the right to possession. § 5–52.0.

The holder may also elect to foreclose his lien instead of taking a deed. § 5–58.0. A sale of property pursuant to such an action "shall vest in the purchaser all right, title, interest, estate, claim, lien and equity of redemption in and against the premises sold: 1. Of all the parties to the action; 2. Of each person claiming from, through or under such parties by title accruing after the filing of notice of pendency of the action; or 3. of persons whose conveyance or encumbrance is subsequent or is subsequently recorded." § 5–64.0.

If the holder of the lien has elected to take a Treasurer's Deed, he may thereafter maintain an action "to compel the determination of any claim which any person makes or which, as appears from the public records, any person might make to any legal or equitable estate or interest in such real property." § 5–57.1, subd. a. Final judgment "is conclusive, as to the title established in the action, against the other party, known or unknown * * * and also against every person claiming from, through or under that party, by title accruing after the filing of the judgment roll, or of the notice of the pendency of the action * * *; also against each person not in being or ascertained at the commencement of the action, who by any contingency contained in a devise or grant or otherwise, could afterward become entitled to a beneficial estate or interest in the property involved, provided that every person in being who would have been entitled to such estate or interest if such event had hap-

pened immediately before the commencement of the action is a party thereto * * *." N.Y.Real Prop.Law § 507, incorporated by reference into § 5–57.1, subd. b of the Nassau County Administrative Code.

On the basis of the foregoing provisions of the Nassau County Administrative Code, the tax lien certificates and the County Treasurer's Deed and the notice of sale, Bialick makes the following argument in support of his claim against the County of Nassau for breach of contract: (1) The newspaper advertisement is an offer to sell and contains the terms of the sale, either directly or by reference to the Code. (2) By specifically enumerating that the sale is subject to the claims of the County and to the provisions of the Soldiers' and Sailors' Civil Relief Acts, the County impliedly covenants that these are the *only* conditions of the sale. (3) Assuming that the federal liens are valid and prior to those of the County purchased at the tax sale, their existence is a breach of a material term of the sale. (4) Furthermore, while the sale is termed a sale of a tax lien, it is in reality a sale of the fee title to the real property encumbered by the lien, subject only to such exceptions as are stated in the notice of sale.

To this the County answers: (1) The tax sale is a sale of the lien and not of the real property. (2) There is no implied covenant in the notice of sale that there are no prior liens of sovereigns. (3) In any event, Bialick is presumed to know the law, and in fact does know that the County tax sales do not cut off sovereign liens. (4) Even were there such an agreement in the sale of the lien, the contract is merged in the deed which contains no such covenant and as to deeds no covenants may be implied. (5) Furthermore, the deed has a broader "subject to" clause than either the notice of sale or the tax sale certificate and the County Treasurer's Deed clearly indicates that the conveyance is subject to "any claims for taxes or for other liens or encumbrances", not limited to those of the County.

Did Bialick bargain for and did the County agree to convey an interest in real property insulated from prior sovereign liens? It is to be noted immediately that neither the notice of sale, tax sale certificate nor the deed, in so many words, contained an agreement to sell and convey a title free of unspecified liens or an anticipated title subject only to specified encumbrances. Bialick's argument is that such an agreement must be implied. He contends that, by specifically enumerating that the sale is subject to the claims of the County and to the provisions of the Soldiers' and Sailors' Civil Relief Acts, the County implied that these are the only exceptions to an agreement to sell and convey a fee title. Inclusio unius est exclusio alterius.

It is clear beyond argument that the County had no such intention, so that unless Bialick was reasonably given that understanding and in reliance thereon acted to his detriment, the County must prevail. Bialick is a member of the bar of the State of Virginia, having been admitted in 1932. He practiced law in that State for four or five years and then returned to New York where he has been engaged in real estate activities ever since. He has attended every tax sale in Nassau County since 1942 and has purchased more than 1,000 Nassau County tax liens either for himself or others. He has also had considerable experience in clearing tax titles. Bialick's background and experience were revealed at a hearing held in chambers sometime after the motions now under consideration were argued. In the light of Bialick's experience and expertise it is impossible to believe that he does not fully understand the applicable law and that he did not fully understand the import of the notice of sale, the tax lien certificates and the tax deed.

There is another reason why Bialick may not prevail. As a matter of law, which is common knowledge among members of the bar having any familiarity whatsoever with conveyancing, a contract to sell real property is merged in

the deed; so that if a contract provides for a deed with covenants but, nevertheless, the grantee accepts delivery of a deed without covenants, he may not thereafter seek to hold the contract-vendor for breach of any covenant. Wheeler v. State, 1907, 190 N.Y. 406, 410–411, 83 N.E. 54. Further, section 251 of the New York Real Property Law provides: "A covenant is not implied in a conveyance of real property, whether the conveyance contains any special covenant or not." Bialick seeks to overcome this rule of merger by arguing that the tax lien certificate is not a contract and that the rule of merger may not be invoked as to the County Treasurer's Deed. He argues that the tax sale, although denominated the sale of a tax lien, is in reality a sale of the real property subject to defeasance if the property is redeemed within twenty-four months of the date of the sale by a person entitled to redeem. In effect he argues that the tax lien certificate is a deed. In support of this argument, Bialick relies on the definitional sections of the Code wherein it is stated that a sale of a tax lien includes the sale of the real property, § 5–24.0, subd. 4, and that a certificate of sale of a tax lien means the instrument by which the County transfers a tax lien and sells the real property affected thereby. § 5–24.0, subd. 5. While the strict language of this provision of the Code seems to provide some substance to his argument, it is clear from a reading of the entire article of the Code governing tax sales that this argument is specious. This is the scheme of tax sales under the Administrative Code of Nassau County: The County sells its interest in the property which, at the time of the sale, is only a lien for designated unpaid taxes. The purchaser has no immediate right to possession. The sale is evidenced by a certificate which is assignable and recordable when assigned. At the end of twenty-four months, if the owner of the property has not satisfied the lien, the holder of the certificate has the option to take a conveyance of title or to foreclose and "call his money". In either case a new title distinct from the title of the defaulting taxpayer results. Even then the new title holder may have to bring an action to perfect his title against all possible claims. Even were Bialick correct in his contention, it would be self-defeating. In arguing that the tax sale, evidenced by the tax sales certificate is ab initio a conveyance of title (albeit defeasible) he invokes upon himself the rule of construction embodied in section 251 of the New York Real Property Law which forecloses a finding of a covenant in either the notice of sale or the certificate of sale.

■ The motion of the defendant, County of Nassau, for summary judgment on Bialick's cross-claim against the defendants: County of Nassau, State of New York; Town of Hempstead, State of New York and School District No. 27, Town of Hempstead, State of New York is hereby granted. Although the Town of Hempstead and School District No. 27 of the Town of Hempstead have not themselves moved for summary judgment on Bialick's cross-claim, the points of law already discussed have equal applicability to them and no purpose would be served in requiring them to move specially for judgment. See Field v. Lew, D.C.E.D.N.Y.1960, 184 F.Supp. 23, 29. The motion of the plaintiff for partial summary judgment of foreclosure and sale of its lien filed January 29, 1952 against all of the defendants is granted. Settle an order consistent with this opinion on or before ten days from the date hereof.